KLINGERIT, INC. v. UNITED STATES

No. 5803.—Invoices dated Sidcup, Kent, England, December 15, 1938, etc.
Certified December 17, 1938, etc.
Entered at New York, N. Y., January 5, 1939, etc.
Entry No. 17874, etc.

(Decided January 29, 1943)

*B. A. Levett* for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the defendant.

WALKER, Judge: These are appeals to reappraisement taken by the importer from values found by the United States appraiser at the port of New York on certain products made of asbestos which were imported through that port during the period from September 26, 1938, to February 24, 1942.

Five types of articles are involved, some in various sizes, which may be enumerated by description and code number as follows:

Klingerit jointing sheets #601
Klingerit Oilit sheets #701
Klingerit jointing sheets #1000
Klingerit valve rings #642
Klingerit packing sleeves #643

Certain of the cases before me are test cases, in which the merchandise was apparently entered at the prices invoiced, which represented, according to plaintiff's witness Strahman, secretary of the plaintiff corporation, the exact prices paid. In all of the other cases duress certificates were filed and entry was made at values calculated to meet the advances made by the appraiser in the test cases. There is no dispute that foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by section 8 of the Customs Administrative Act of 1938, T. D. 49646, is the correct basis of value of the merchandise involved.

It appears that the plaintiff-corporation, which, notwithstanding the similarity of names, maintains with the exporter, Richard Klinger, Ltd., of Kent, England, a relationship only of buyer and seller, is the sole distributor of the products of the latter in the United States, and as such enjoyed some advantage in the price at which it received the products of the seller. Plaintiff concedes that the prices to it "as the sole distributor of the merchandise in the United States are lower than those at which the articles are offered for sale in the home

market." It is not, therefore, contended that the *per se* invoiced and entered prices in the test cases represent the correct foreign values, but it is conceded, in fact, "that with one exception [Klingerit Oilit Sheets #701] the per se prices returned by the appraiser are correct," the dispute being as to the discounts from such *per se* prices which should be allowed. As to the Klingerit Oilit sheets #701, the appraiser found a *per se* price of 4 shillings per pound, which the plaintiff claims should be 3 shillings 6 pence per pound.

A cash discount of 2½ per centum from such *per se* prices was allowed by the appraiser in all instances, and the correctness of this is agreed to by the plaintiff. Plaintiff, however, contends that a further discount of as much as 50 per centum in some instances should have been allowed.

The evidence offered on behalf of the plaintiff consists of the testimony of Theodore Strahman, Jr., who identified himself as secretary of the plaintiff-corporation, and an affidavit, received in evidence as exhibit 1, executed before the United States vice consul at London, England, by one William Ernest Hoes, who states therein that he is a director of the exporting firm.

An analysis of the testimony of Mr. Strahman shows that he gave no evidence which might be considered to have any weight insofar as the foreign market value of the merchandise in question is concerned, and, in fact, he admitted on cross-examination that he had no personal knowledge of the prices at which the items in question were sold for home consumption.

Turning, therefore, to a consideration of the affidavit, exhibit 1, I find that in the first paragraph thereof Mr. Hoes identifies himself, and in the second paragraph he states that as a director of the exporting firm he "is thoroughly familiar with the products manufactured and sold by said Richard Klinger, Ltd., and the prices paid therefor," and particularly with the merchandise covered by certain enumerated invoices involved in this case.

Paragraphs 3, 4, and 5 of the affidavit, and certain invoices appended thereto as exhibits, do not cast any light on the controversy herein, as they relate only to the prices charged by Richard Klinger, Ltd., to its sole agents in the British Isles and throughout the world, and do not purport to indicate anything with regard to the price at which such merchandise was freely offered for sale for home consumption to all purchasers within the meaning of section 402 (c) of the Tariff Act of 1930, *supra*.

Paragraph 6 of the affidavit reads as follows:

(6) That the said Richard Klinger Limited issued a price list of such merchandise for sale in the principal markets of Great Britain from which it has been, and is, a practice, and specifically during the period covering the shipment of merchandise covered by the respective consular invoices, to allow varying dis-

counts dependent upon the status of their customers and the quantities pur-chased by them, and that such list prices and discounts are as follows:

| Product | List Price | Discount to small Merchants and large users in the British Isles | Discount to large Merchants, sole agents and very large users in the British Isles | Export Price |
|---|---|---|---|---|
| "KLINGERIT" (No. 601): | | | | |
| .008" Thick | 7/6d. lb. | 25% | 50% | 2/6d. lb. |
| 1/64" " | 4/6d. " | " | " | 2/- " |
| 1/32" to 1/4" " incl. | 4/- " | " | " | 1/9d " |
| "KLINGER OILIT" (No. 701): | | | | |
| .008" Thick | 6/6d lb. | 25% | 50% | 2/3d. " |
| 1/64" " | 4/- " | " | " | 1/3d " |
| 1/32" to 1/4" " incl. | 3/6d " | " | " | 1/- " |
| "KLINGERIT 1,000" JOINTING (No. 762): | | | | |
| 1/42" Thick | 12/6d lb. | 25% | 40% | 6/6d. " |
| 1/32" " | 7/6d " | " | " | 4/6d. " |
| 1/16" " | 7/6d " | " | " | 4/- " |
| KLINGER VALVE RINGS (No. 642): | | | | |
| Size 1/4" & 3/8" | 6d each | 20% | 25% | 2.68d. each. |
| " 1/2" | 8d " | " | " | 2.85d " |
| " 3/4" | 9d. " | " | " | 3.42d " |
| " 1" | 11d " | " | " | 3.10d " |
| " 1 1/4" | 1/4d " | " | " | 6.84d " |
| " 1 1/2" | 1/8d " | " | " | 8.9d " |
| " 2" | 2/5d " | " | " | 1/- d " |
| " 2 1/2" | 5/3d " | " | " | 1/7d " |
| " 3" | 6/4d " | " | " | 3/7d " |
| " 4" | 10/2d " | " | " | 3/8d " |
| KLINGER PACKING SLEEVES (No. 643): | | | | |
| Size A.B. 12 | 2/3d. each | 20% | 25% | 25% discount. |
| " A.B. 18 | 3/9d. " | " | " | " " |
| " A.B. 22 | 4/3d. " | " | " | " " |
| " A.B. 28 | 6/6d. " | " | " | " " |
| " A.B. 32 | 7/9d. " | " | " | " " |
| " A.B. 40 | 9/9d. " | " | " | " " |
| " A.B. 50 | 11/6d " | " | " | " " |

As pointed out by counsel for the Government in the brief filed on behalf of the defendant, nothing is shown in the foregoing paragraph or in the evidence offered by the plaintiff to indicate which discount was the discount freely offered to all purchasers of merchandise such as that in issue in usual wholesale quantities and in the ordinary course of trade at the time of exportation of the instant merchandise. It does not appear that the categories of purchasers, viz, small mer-chants, large users, large merchants, and very large users, all in the British Isles, were the only ones who purchased merchandise such as that in issue for home consumption, and I cannot infer that the discount shown in the first discount column under the heading "Discount to small Merchants and large users in the British Isles," which is in each case the lower of the two discounts shown, was applied to all purchasers.

I note, moreover, that the prices shown in the affidavit as relating to small merchants and large users in the British Isles insofar as Klingerit jointing sheets #1000 and Klingerit jointing sheets #601 are the same as the appraised values for those items.

It would conclusively appear that plaintiff has failed to disprove the appraised value and to affirmatively establish some other value, and at the close of the plaintiff's case counsel for the Government moved the dismissal of these appeals "on the ground that it [plaintiff] has failed to prove all the elements necessary to show an affirmative case of some specific value." Decision on the motion was reserved, and on behalf of the defendant there were offered and received in evidence three reports of a United States Treasury representative detailing the results of an investigation conducted by him at the offices of the exporter in England.

It is apparent from a perusal of the brief filed on behalf of the plaintiff that reliance is placed by the plaintiff on these reports, collective exhibits 2, 3, and 4, to supply the elements missing from its own evidence. I find, however, from a careful examination of the reports and the exhibits appended thereto that, far from supporting the values claimed by the plaintiff, they tend to support the values found by the appraiser.

In the report marked collective exhibit 2, dated March 3, 1939, under the caption "Foreign Value" and the subheading "Discounts" the Treasury representative says:

> The merchandise is sold at the best obtainable price and varying discounts are granted with the sole aim of making sales to consumers, manufacturers, wholesalers and agents.
>
> A discount of 2½ percent is allowed for cash within 30 days.

Immediately below this, under the subheading "Usual Wholesale Quantity" the following appears:

> It was found by examination of hundreds of sales that the usual quantity sold to all classes of customers is as follows:

| | |
|---|---|
| Valve rings: | Up to 24 pieces. |
| Klingerit sheets | "  " 20 pounds. |
| "  oilit | "  " 20 pounds. |
| "  1000 | "  " 36 pounds. |

In this report, and also in the report marked collective exhibit 4, dated March 31, 1940, certain tabulations of sales made in the home market are given. These do not purport to cover the entire period of the shipments involved herein but only certain portions thereof around the time of five of the shipments in issue. Thus, for example, sales of valve rings are given for the periods from August 16, 1938, to August 30, 1938, December 15, 1938, to December 17, 1938, January 24, 1939, to January 28, 1939, and October 3, 1939, to November 12, 1939. In all, there were 124 sales reported, of which 91 were of 24 pieces or less and 33 were of over 24 pieces, thus bearing out the statement of the Treasury representative that the usual quantity of such rings sold to all classes of customers was up to 24 pieces. Of the 91 sales in usual wholesale quantities 43 were made at list price,

2 at 7½ per centum discount, 26 at 10 per centum discount, 14 at 20 per centum discount, and 6 at 25 per centum discount. The merchandise was appraised at the list price less only the 2½ per centum cash discount.

I fail to find anything in the break-down of the sales as I have detailed it above which could in any way support the plaintiff's claim that the correct foreign value of such rings during the period involved was list price less discounts of 25 per centum and 2½ per centum. The inference to be drawn is, in fact, in favor of the appraiser's finding, as it would appear that the price at which *all* purchasers could buy was the list price in each instance, less 2½ per centum.

A similar break-down of the figures given for the other products in issue leads to a similar result.

With reference to the claim made by plaintiff that the correct list price for Klingerit Oilit sheets #701 in thicknesses of ⅟₃₂″ to ¼″ was 3 shillings 6 pence, which is the price shown in the portion of the affidavit, exhibit 1, quoted above, I note a statement in the report of the Treasury representative marked collective exhibit 2 as follows:

Prices for "Oilit" sheets are the same as for Klingerit jointing sheets.

and it appears that each of the few sales of this article reported by the Treasury representative were made at the 4 shilling list price found by the appraiser.

On the record before me, I find that the plaintiff has not met the burden placed upon it of disproving the appraised values and of establishing other values, and the motion made by counsel for the defendant to dismiss the appeals is therefore granted.

Judgment will issue accordingly.